UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

KHALIL DANIELSON,

                              Petitioner,

          -against-

WILLIAM LEE, Superintendent, Green
Haven Correctional Facility,

                              Respondent.

-------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:__  4/4/2014
```

09-CV-03839 (HB)(SN)

REPORT AND
RECOMMENDATION

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE HAROLD BAER, JR.:

          This *habeas* petition asks the Court to consider whether a "calculated murder[er]," People v. Danielson, 832 N.Y.S.2d 546, 557 (1st Dep't 2007) (Mazzarelli, J.P., dissenting), who planned and carried out the execution of a rival gang member, was properly convicted of depraved indifference murder under New York law. He was convicted after a jury trial in 2001. At that time, the law of depraved indifference murder was firmly established under People v. Register, 60 N.Y.2d 270 (1983). Before his conviction became final in 2007, however, the law in New York fundamentally changed, requiring proof of a mental state of depraved indifference. See People v. Feingold, 7 N.Y.3d 288, 294 (2006). There is no question in my mind that the petitioner was anything but depravedly indifferent to whether his victim lived or died; he wanted him dead. He and two other gang members fatally shot the victim several times at a very short distance at an isolated area of a park where the petitioner had lured the victim under false pretenses. Measured against the law in effect at the time his conviction became final, it is highly unlikely that any reasonable juror would have found the element of *mens rea* for the crime of

depraved indifference murder beyond a reasonable doubt. This Court, however, cannot faithfully reach this conclusion because it is plain that the petitioner did not raise his legal sufficiency argument to the New York Court of Appeals, and thus, such claim is unexhausted. For this reason, and because his other grounds for relief are without merit or unavailable on *habeas* review, I recommend that his petition be DENIED.

## BACKGROUND

The following facts are derived from the parties' briefs and the transcripts of court proceedings.

## I.    Introduction

On July 13, 1998, the petitioner Khalil Danielson ("Danielson"), Gerard Miller, and Omari Green, all members of the Bloods gang, agreed to take Kenneth Andrews to Seton Falls Park in the Bronx to kill him for "false flagging"—pretending to be a member of one gang while actually being a member of another gang. (Mem. of Law in Support of Amended *Habeas* Petition ("Mem. of Law") at 3-4; Mem. of Law in Opp'n to Petition for a Writ of *Habeas Corpus* ("Opp'n") at 2.) On July 14, 1998, at approximately 10:30 p.m., Danielson, Green, Miller, Andrews, and several other individuals went to an isolated area of Seton Falls Park in the Bronx. Danielson, Green, Miller, and Andrews stood in a group several feet away from the other individuals who were sitting on a rock smoking cigarettes and marijuana and drinking. Danielson, Green, and Miller began to argue with Andrews. Na'am Matthews, one of the individuals sitting on the rock, heard one of the three accuse Andrews of "false flagging." Either Danielson or Miller pulled out a gun and fired multiple shots at Andrews; the other proceeded to fire a second set of shots at Andrews. Green then fired a single shot to Andrews's head as he lay on the ground. Approximately eleven shots were fired at Andrews from an arm's length away.

2

Though Andrews suffered multiple gunshot wounds to various parts of his body, two could have been fatal—one to the back of his head and the other to his abdomen. The government was unable to determine if Danielson had fired either of the fatal shots. Danielson was charged with intentional murder, depraved indifference murder, manslaughter in the first degree, and criminal possession of a weapon in the second degree. On June 5, 2001, after a jury trial, he was acquitted of intentional murder and convicted of depraved indifference murder. He was sentenced to a prison term of twenty years to life. Danielson has been incarcerated at Fishkill Correctional Facility since February 14, 2002. His earliest release date is July 21, 2018.

## II.  Procedural Background

### A.  Direct Appeal

In March 2005, Danielson, through counsel, filed a brief in the Appellate Division, First Department challenging his conviction. (See Br. for Def.-Appellant ("Ex. 1").)[1] Counsel argued that (1) Danielson's conviction for depraved indifference murder should be vacated as legally insufficient because no juror could have concluded that Danielson shot the victim without intent; (2) Danielson's indictment should be dismissed because the verdict was against the weight of the evidence; and (3) there should be a new trial because the hearing court incorrectly concluded that the identification was merely confirmatory.

On March 27, 2007, a divided panel of the Appellate Division affirmed Danielson's judgment of conviction for depraved indifference murder. See People v. Danielson, 832 N.Y.S.2d 546 (1st Dep't 2007). The court held that Danielson's legal sufficiency claim was unpreserved because Danielson's trial counsel moved for dismissal only on the lack of credible

---

[1] All exhibits in this opinion refer to those submitted with the Answer to the Petition for a Writ of *Habeas Corpus*.

evidence that Danielson was present at the murder scene. Trial counsel made no mention of the inadequacy of the evidence regarding recklessness for a depraved indifference conviction. The court declined to review the verdict in the interests of justice because "where a defendant's argument for appellate reversal rests on the unseemly assertion that he is entitled to relief because he intentionally murdered the victim, rather than having recklessly caused his death, no plausible argument can be made that review of defendant's claim is in the interests of justice." Id. at 547. The court also held that the verdict was not against the weight of the evidence. Understanding a traditional weight of the evidence analysis to be limited to an evaluation of the weight of witness testimony and the inferences that could permissibly be drawn from such testimony, the court did not believe that an element-based analysis was proper, particularly in light of the fact that Danielson had not raised the issue of intent and recklessness in his weight of the evidence argument. The court, however, considered the elements and concluded that under the law at the time of Danielson's trial, the verdict was not against the weight of the evidence: "[I]n 2001, . . . neither strong circumstantial proof of an intent to kill nor the existence of factual circumstances supporting a compelling inference that defendant's conduct created a risk of death approaching certainty, stood as a bar to a jury's conviction of depraved indifference murder." Id. at 550. Finally, the court held that Danielson's motion to suppress a photo identification was properly denied because the hearing court correctly determined that the photo identification was merely confirmatory; the witness and the defendant knew each other.

A dissenting justice agreed that Danielson's legal sufficiency claim was unpreserved and should not be considered in the interest of justice. She concluded, however, that Danielson's conviction of depraved indifference murder should be reversed as against the weight of the evidence. The dissent stated that it was the court's obligation to assess whether all of the

evidence, when considered in light of the charge to the jury, supported the conviction, whether or not the defendant raised a particular challenge to an element. The dissent emphasized that both witnesses present in the park testified that Danielson and two others shot Andrews at least ten times. The medical examiner testified that the causes of death were injuries to the brain and liver from two gunshot wounds. The shot to the back of the head was from a .38 caliber bullet. The shot to the abdomen was from a .380 caliber bullet.

> There is simply no view of the trial record which could support the objective conclusion that defendant's "homicidal level of mental culpability" was recklessness. This was not a spontaneous encounter, and there was nothing impulsive about defendant's actions. This was a calculated murder. Defendant and the other participants from his gang planned on July 13, 1998 to take Kenneth Andrews to Seton Falls Park on the night of July 14, 1998 to kill Andrews for false flagging. The group agreed on the location for the killing, they brought Andrews to that location on the designated night, and they discharged more than 11 bullets at him from close range. The ballistics expert testified that shots were fired even after Andrews fell to the ground, and that more than one of the wounds was fatal.

Id. at 557. Upon consideration of the facts and the law at the time of trial, the dissenting judge concluded that "when the evidence is measured against the court's charge on the elements of depraved indifference murder, no inference could fairly be drawn that defendant and the other gang members were merely indifferent to Andrews's plight." Id.

**B. Leave Application**

On May 31, 2007, the Appellate Division granted Danielson leave to appeal the affirmance of his judgment of conviction to the New York State Court of Appeals. In August 2007, through counsel, Danielson argued in his brief that (1) the Appellate Division incorrectly assumed that the "weight of evidence" review power was limited to a review of the credibility of witnesses; (2) the Appellate Division incorrectly evaluated the weight of evidence according to the law at the time of the trial, rather than the law at the time of the appeal, thereby giving undue

deference to the jury's determination of the *mens rea* element of depraved indifference to murder; and (3) Danielson was denied his state and federally guaranteed rights to the effective assistance of counsel when his trial lawyer, while moving to dismiss for legal insufficiency, failed to specify an argument that would have prevailed on appeal.

On December 13, 2007, the New York State Court of Appeals affirmed the order of the Appellate Division, holding that though the Appellate Division wrongly concluded that it was unnecessary to conduct an element-based review when considering a weight of the evidence argument, it alternatively did conduct such analysis and concluded that the jury correctly weighed the evidence when it convicted Danielson of depraved indifference murder. People v. Danielson, 9 N.Y.3d 342, 349 (2007). Because the Appellate Division had in fact conducted an element-based analysis, the Court of Appeals was without authority to review its determination. The Court of Appeals also rejected Danielson's claim of ineffective assistance of counsel for failure to preserve his legal sufficiency claim, concluding that under the law at the time of trial, circumstantial evidence of intent would still have supported a depraved indifference murder verdict.

### C.  New York State 440.10 Motion

In *pro se* papers dated January 22, 2009, Danielson moved in the New York State Supreme Court, Bronx County, to have his judgment of conviction vacated under New York Criminal Procedure Law ("C.P.L.") § 440.10, claiming that his trial counsel had been ineffective by not calling alibi witnesses to testify at trial. (Aff. in Supp. of Not. of Mot. to Vacate J. ("Ex. 5").)

On April 30, 2010, the Honorable John S. Moore granted Danielson an evidentiary hearing and assigned an attorney to represent him. The hearing continued on three separate dates:

6

February 3, 2011, February 22, 2012, and March 13, 2012. Danielson's counsel refused to call

Danielson's trial attorney or one of Danielson's alibi witnesses, Rhonda Livingston, to testify.

Counsel refused to do so over Danielson's objections. "Mr. Danielson takes exception and

wishes me to call additional witnesses at this particular hearing which . . . I previously

represented to the Court that I am not, as his attorney, inclined to do nor will I do for reasons that

really aren't germane here." (Proceeding Tr., Mar. 13, 2012, at 2.) Counsel further stated, "I have

decided after conferring with [trial counsel] that I will not be calling him as a witness, and that is

a decision as his attorney on the 440 motion I have made after discussions with [trial counsel]

and for reasons that I believe are appropriately based." (440 Hr'g Tr., Feb. 22, 2014, at 64-65.)

Danielson's other alibi witness, Marie Livingston, his grandmother, did testify at the hearing.

Danielson requested that counsel be relieved of his duties and that another lawyer, Stacy

Richman, be permitted to appear. In response the Court stated: "I will deem, based on this

record, defense rests and put the case on for April 17th for decision. . . . If the defense hires the

named counsel, Ms. Richman, Ms. Richman is free to come in, free to come to this court on

notice to the district attorney and notice to you and indicate that she has been retained in this case

make whatever application she feels is appropriate." (Proceeding Tr., Mar. 13, 2012, at 8.)

On May 8, 2012, after the hearing, the Supreme Court denied Danielson's C.P.L. §

440.10 motion. (Order ("Ex. 7").) At a hearing the next day, Danielson questioned how the judge

could close the case when the record was incomplete and requested that he be allowed to

represent himself. The judge informed Danielson that he could proceed *pro se* in the future but

because the court had already issued a decision in the case, Danielson could not now represent

himself on this matter. On August 9, 2012, in *pro se* papers, Danielson sought a certificate for

leave to appeal to the Appellate Division the denial of this 440.10 motion. (Not. of Appl. ("Ex.

8").) On November 8, 2012, the Appellate Division denied Danielson's request. (Certificate Den. Leave ("Ex. 9").)

### D.  Danielson's Federal *Habeas Corpus* Petition

On March 6, 2009, Danielson filed a *pro se* petition for a writ of *habeas corpus*. On August 3, 2009, the Honorable Harold Baer, Jr. granted Danielson's request to have his *habeas* petition stayed until his C.P.L. § 440.10 motion had been decided. Following numerous extensions of the stay request, on February 7, 2013, Judge Baer granted Danielson's request to lift the stay and ordered an amended petition be filed by April 15, 2013. On April 9, 2013, Danielson filed an amended petition. On April 17, 2013, Danielson's petition was referred to a magistrate judge for a Report and Recommendation. On April 18, 2013, the petition was reassigned to my docket. On November 1, 2013, respondent filed an opposition. Having not received a reply submission, on December 27, 2013, the Court granted Danielson until January 13, 2014 to file a reply. None was filed and Court deems the petition fully submitted.

### DISCUSSION

### I.  Timeliness

It is uncontested that Danielson's *habeas* petition is timely. The Antiterrorism and Effective Death Penalty Act (the "AEDPA") requires a state prisoner whose conviction has become final to seek federal *habeas corpus* relief within one year. 28 U.S.C. § 2244(d)(1)(A). This one-year period serves the "well-recognized interest in the finality of state court judgments." Duncan v. Walker, 533 U.S. 167, 179 (2001). A petitioner's judgment becomes final 90 days after an order of the Court of Appeals is filed – *i.e.*, after the "period to petition for a writ of *certiorari* to the United States Supreme Court." Pratt v. Greiner, 306 F.3d 1190, 1195 & n.1 (2d Cir. 2002).

The AEDPA tolls the one-year limitations period for the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, <u>provided that</u> the filing of the notice of appeal is timely under state law." <u>Evans v. Chavis</u>, 546 U.S. 189, 191 (2006) (emphasis in original) (citing <u>Carey v. Saffold</u>, 536 U.S. 214 (2002)).

Here, a judgment was rendered against Danielson on January 2, 2002, and his conviction became final on March 12, 2008 – 90 days after the Court of Appeals affirmed Danielson's conviction. Danielson filed his federal *habeas* petition on March 6, 2009, less than one year after his conviction became final. Thus, his petition is timely.

## II.   Exhaustion

### A.  Statement of Law

Before a federal court may review a petition for a writ of *habeas corpus*, a petitioner must exhaust all state-provided remedies. 28 U.S.C. § 2254(b)(1)(A). <u>See also</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999) (to exhaust a claim, a petitioner must "invoke[] one complete round of the State's established appellate review process" before bringing the same claim in federal court). A claim is deemed exhausted if the petitioner: (1) fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (2) presented his claim to the highest state court that could hear his claim. <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004); <u>O'Sullivan</u>, 526 U.S. at 844-48.

To fairly present his claims, a petitioner may not rely solely on general principles of fairness, and instead must refer to specific constitutional provisions or concepts. <u>See</u> <u>Reid v.</u>

9

Senkowski, 961 F.2d 374, 376 (2d Cir. 1992) (minimal reference to the constitution satisfies the

exhaustion requirement); see also De La Cruz v. Kelly, 648 F. Supp. 884, 888 (S.D.N.Y. 1986)

(finding that petitioner alerted the state court of the constitutional aspect of his claims when he

argued that the challenged ruling denied him a fair trial and cited the Fourteenth Amendment).

The legal doctrine asserted in the state courts does not need to be identical to that raised in the

*habeas* petition, but "the nature or presentation of the claim must have been likely to alert the

court to the claim's federal nature." Daye v. Att'y Gen. of New York, 696 F.2d 186, 192 (2d Cir.

1982).

     The Court of Appeals for the Second Circuit applies the "fair presentation" standard

liberally, allowing that a state court may be deemed to be on notice of the constitutional nature of

a claim even if the petitioner did not specifically quote the United States Constitution. Notice

will be found when the appellate brief shows "(a) reliance on pertinent federal cases employing

constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact

situations, (c) assertion of the claim in terms so particular as to call to mind a specific right

protected by the Constitution, and (d) allegation of a pattern of facts that is well within the

mainstream of constitutional litigation." Ramirez v. Att'y Gen. of New York, 280 F.3d 87, 95

(2d Cir. 2001) (citing Daye, 696 F.2d at 194). This position protects petitioners who rely on

constitutional principles without citing "book and verse on the federal constitution," while

ensuring that state courts have the opportunity to "pass upon and correct" alleged violations of

federal rights. Picard v. Connor, 404 U.S. 270, 275, 278 (1971) (citations omitted).

### B.  Exhausted Ineffective Assistance of Trial Counsel Claim

     Danielson raises an ineffective assistance of trial counsel claim in his Amended Petition.

He argues that counsel was ineffective for (1) failing to preserve a legal sufficiency argument in

connection with the depraved indifference murder charge, and (2) failing to call alibi witnesses to testify at trial. Both of these claims are exhausted. Danielson's appellate counsel raised an ineffective assistance of trial counsel claim to the Court of Appeals, arguing in federal terms that trial counsel's failure to preserve a meritorious argument regarding the legal insufficiency of Danielson's depraved indifference conviction deprived him of effective representation. In his *pro se* C.P.L. § 440.10 motion, Danielson raised another ground for ineffective assistance of counsel: trial counsel's failure to call his alibi witnesses. Danielson raised the same argument to the Appellate Division in his leave application. Respondent concedes that Danielson's ineffective assistance of trial counsel claim is exhausted.

### C. Unexhausted Legal Sufficiency Claim

Respondent argues that Danielson's legal sufficiency claim is unexhausted because he failed to raise the legal sufficiency claim in his brief to the Court of Appeals.[2] Danielson did raise this claim in his brief to the Appellate Division, though he did not cite to any constitutional principles or federal law. On a legal sufficiency challenge, New York state law and federal law are governed by the same standard: the reviewing court considers whether any trier of fact could have found guilt beyond a reasonable doubt based on the evidence presented at trial. See Jackson v. Virginia, 443 U.S. 307, 319 (1979) ("after viewing the evidence in the light most favorable to the prosecution, [could] *any* rational trier of fact . . . have found the essential elements of the crime beyond a reasonable doubt"). See also People v. Bleakley, 69 N.Y.2d 490, 495 (1987) ("[T]he court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis

---

[2] Danielson's remaining claims are not cognizable on *habeas* review. Because these claims fail on the merits, the Court does not consider whether they were also exhausted.

of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged.") (internal citation omitted). Because Danielson's legal sufficiency claim is the "substantial equivalent" of a federal legal sufficiency claim, it may be considered fairly presented in federal terms to the Appellate Division. See Daye, 696 F.2d at 192 (finding that a claim has fairly been presented if "the legal basis of the claim made in state court was the 'substantial equivalent' of that of the *habeas* claim" (quoting Picard v. Connor, 404 U.S. 270, 278 (1971))). See also Hawkins v. West, 706 F.2d 437, 440 (2d Cir. 1983) ("[T]he New York Court of Appeals has consistently adhered to a sufficiency of the evidence standard which is functionally identical to the Jackson standard." (quoting LaBruna v. U.S. Marshal, 665 F.2d 439, 442 n.3 (2d Cir. 1981))). See e.g., Gifford v. Artus, 13 Civ. 6060 (MAT), 2013 WL 6837177, at *5 (W.D.N.Y. Dec. 26, 2013) ("Although [petitioner] only cited to New York state law, it is apparent that he was invoking the legal sufficiency standard in terms so particular as to call to mind a specific right protected by the Constitution.") (citation and quotation marks omitted); Carter v. Chappius, 12 Civ. 0171 (JKS), 2013 WL 6579055, at *4 (N.D.N.Y. Dec. 13, 2013) (a legal sufficiency claim "is within the mainstream of federal constitutional litigation" (citing Daye, 696 F.2d at 194)). Therefore, Danielson fairly presented his legal sufficiency claim to the Appellate Division.[3]

The problem lies with his appeal to New York's highest court. In his leave letter and merits brief to the Court of Appeals, Danielson did not raise an independent legal sufficiency claim but focused his appellate arguments on his weight of the evidence argument, a claim that was not procedurally barred from review, pointing to the particular elements of depraved

---

[3] The Appellate Division denied Danielson's legal sufficiency claim as unpreserved under New York's contemporaneous objection rule, and declined to review it on the merits in the interests of justice. People v. Danielson, 832 N.Y.S.2d at 548. See also id. at 186 (Mazzarelli, J.P., dissenting) (same).

indifference murder and intentional murder. Though the brief makes reference to the elements of depraved indifference, it fails to do so in the context of an independent legal sufficiency claim.

Danielson did, however, raise to the Court of Appeals the issue of legal insufficiency as the basis for his ineffective assistance of trial counsel claim. The Court of Appeals quickly rejected the claim of ineffective counsel because "under the law at the time of trial, circumstantial evidence of intent would still have supported a depraved indifference murder verdict." People v. Danielson, 9 N.Y.3d at 350.

In light of these facts, Danielson's legal sufficiency claim can be deemed exhausted only if the presentation of that claim to the New York Court of Appeals within the context of a claim for ineffective assistance of counsel would be sufficient. The Court of Appeals for the Second Circuit has indicated, however, that an ineffective assistance claim is "distinct" from the claim whose omission suggests such ineffectiveness, and therefore, the underlying claim is not preserved for purposes of *habeas* review. See Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001) (per curiam). This is because "[a] court considering ineffective assistance might never reach the underlying constitutional claims, and the rejection of the ineffective assistance claims without detailed comment does not bespeak any necessary ruling on the underlying constitutional claims." Id. Recognizing this principle, courts have declined to find a claim to be exhausted when it has been presented to the state courts only in the context of an ineffective assistance claim. Rush v. Lempke, 500 F. App'x 12, 15 (2d Cir. Oct. 11, 2012) (finding that petitioner's right to self-representation claim would not be fairly presented to state courts if the petitioner were permitted to return to state court to file a *coram nobis* petition for ineffective assistance of appellate counsel based on a failure to raise the self-representation claim on appeal); Jones v. Senkowski, 42 F. App'x 485, 487 (2d Cir. May 22, 2002) (declining to permit an ineffective

assistance of appellate counsel claim to constitute a fair presentation of the underlying claim for purposes of exhaustion: "To hold otherwise would be to establish that *no* claim that was omitted on direct appeal could be exhausted until such time as the habeas petitioner brought a claim in state court of ineffective assistance premised on the omission. We decline to establish such a rule.") (emphasis in original); Bond v. Walker, 68 F. Supp. 2d 287, 295-96 (S.D.N.Y. Sept. 27, 1999) (finding a claim unexhausted where it was presented for the first time at the state court of appeals and only in the form of an ineffective assistance of appellate counsel claim); Hall v. Phillips, 04 Civ. 1514 (NGG)(VVP), 2007 WL 2156656, at *5 (E.D.N.Y. July 25, 2007) ("As courts in this circuit have consistently recognized, an ineffective assistance claim is an insufficient vehicle for exhausting the underlying allegations when those allegations are asserted for the first time as separate claims on habeas."). Danielson's legal sufficiency argument cannot be deemed exhausted by his having argued it as the basis for an ineffective assistance of counsel claim.

Accordingly, though Danielson's legal sufficiency claim was raised at the Appellate Division and held to be unpreserved, his failure to challenge that determination at the Court of Appeals renders his claim unexhausted. See O'Sullivan, 526 U.S. at 845 (petitioner must invoke "one *complete* round of the State's established appellate review process") (emphasis added). See e.g., White v. Rock, 10 Civ. 5163 (SJF), 2013 WL 1767784, at *15, 21 (E.D.N.Y. Apr. 22, 2013) (finding petitioner's legal sufficiency claim unexhausted where the Appellate Division found the claim unpreserved and petitioner failed to raise it at the Court of Appeals); Cain v. Hunt, 07 Civ. 5919 (KMK), 2012 WL 340117, at *1 n.1 (S.D.N.Y. Feb. 2, 2012) (same); Chu v. Artus, 07 Civ. 6684 (RJS)(DF), 2011 WL 8292381, at *14 (S.D.N.Y. Aug. 9, 2011) rep. and rec. adopted by 2012 WL 2899378 (S.D.N.Y. July 16, 2012) (same).

### D.  Cause and Prejudice for the Procedural Default

Because Danielson's legal sufficiency claim is unexhausted, it may be deemed exhausted but procedurally barred from review by this Court. A federal court "need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred" due to a state procedural rule. Harris v. Reed, 489 U.S. 255, 263 n.9 (1989). This is because it "would be inconsistent with [§ 2254(b)], as well as with underlying principles of comity" to require a petitioner to exhaust a claim in state court if the results of further review are "predetermined." Castille v. Peoples, 489 U.S. 346, 350 (1989). In such a case, a petitioner no longer has "remedies available in the courts of the State" within the meaning of § 2254(b). Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982). Accordingly, where a petitioner cannot resort to state court to present a constitutional claim, a federal court will deem the claim exhausted but procedurally defaulted. Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991); Hayward v. Brown, 09 Civ. 6495 (LAK)(AJP), 2010 WL 2629037, at *26 (S.D.N.Y. July 1, 2010). "Dismissal for a procedural default is regarded as a disposition on the habeas claim on the merits." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). Thus, "any future presentation of the claim would be a second or successive habeas petition, requiring authorization ... pursuant to 28 U.S.C. § 2244(b)(3)(A)." Id. (citing Carter v. United States, 150 F.3d 202, 205-06 (2d Cir. 1998)).

New York procedural rules bar Danielson from now raising his legal sufficiency claim in the state appellate process. First, he cannot again seek leave to appeal his conviction because he already filed the one application for leave to appeal to the Court of Appeals to which he is entitled. C.P.L. § 450.10(1) (preserving one appeal as of right from a criminal conviction); 22 New York Codes, Rules and Regulations ("N.Y.C.R.R.") § 600.8(b), 550.9 *et seq.* (an application for a certificate granting leave to appeal a criminal case shall be made within 30 days

15

after service of judgment on applicant). He is time-barred from making an application to the Court of Appeals for reargument or reconsideration. See N.Y.C.R.R. § 500.20.

Second, while New York State law provides for collateral review of a conviction under C.P.L. § 440.10, such review is not available if the claim could have been raised or was actually decided on the merits on direct review. See C.P.L. § 440.10(2)(a), (c). Here, Danielson's legal sufficiency claim was raised to the Appellate Division. The claim could have been raised to the Court of Appeals and was not. Because Danielson failed to raise this claim on direct appeal to the highest state court, the claim cannot be brought now under a new C.P.L. § 440.10 motion. See C.P.L. § 440.10(2)(c).

A petitioner may overcome a procedural bar only by demonstrating either cause for the default and resultant prejudice, or that the failure to consider the federal habeas claim will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); see also DiSimone v. Phillips, 461 F.3d 181, 190 (2d Cir. 2006) ("Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the petitioner can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" (brackets omitted) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998))).

"Cause" may be established in two ways. "First, the cause requirement may be met if some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule." Gutierrez v. Smith, 702 F.3d 103, 111 (2d Cir. 2012) (citing McCleskey v. Zant, 499 U.S. 467, 493 (1991)). An example of an objective impediment is "a showing that the factual or legal basis for a claim was not reasonably available to counsel" at that time. Strickler v. Greene, 527 U.S. 263, 283, n.24 (1999). "Second, futility may constitute cause

'where prior state case law has consistently rejected a particular constitutional claim.'" Gutierrez, 702 F.3d at 111-12 (quoting DiSimone, 461 F.3d at 191).

Danielson argues that he can establish cause and prejudice for his default. Danielson offers two grounds for cause: the novelty of the legal sufficiency argument such that the legal argument would have been "futile" or was "unavailable," and the ineffective assistance of trial counsel. Neither is availing.

Danielson's first argument rests on the fundamental shift in New York law for a conviction of depraved indifference murder that occurred between the time of his trial and when his conviction became final. Under New York law, a person is guilty of depraved indifference murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person . . . ." N.Y. Penal Law § 125.25(2). From at least 1983 to 2002,

> recklessness, pure and simple, [was] the *mens rea* for depraved indifference murder, which is distinguishable from manslaughter [ ] not by the mental element involved but by the objective circumstances in which the act occurs; these circumstances define the degree of risk created by the defendant. As a result, the focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct.

Policano v. Herbert, 7 N.Y.3d 588, 597 (2006) (quoting People v. Register, 60 N.Y.2d 270 (1983) (quotation marks and citations omitted) (alterations in the original)). Then, in a series of cases between 2002 and 2006, the New York Court of Appeals overturned its precedent and held that "depraved indifference to human life is a culpable mental state. . . . [W]e cannot conceive that a person may be guilty of a depraved indifference crime without being depravedly indifferent." Feingold, 7 N.Y.3d at 294, 295. For the progression of the change in the law, see

17

People v. Sanchez, 98 N.Y.2d 373 (2002); People v. Hafeez, 100 N.Y.2d 253 (2003); People v. Gonzalez, 1 N.Y.3d 464 (2004); People v. Payne, 3 N.Y.3d 266 (2004); People v. Suarez, 6 N.Y.3d 202 (2005); People v. Feingold, 7 N.Y.3d 288 (2006). See also Mannix v. Phillips, 619 F.3d 187, 198 (2d Cir. 2010) (explaining the state of the law under Register and the subsequent changes).

Thus, to establish cause for the procedural default, Danielson must demonstrate that, at the time of his appeal to the New York Court of Appeals in 2007, such an argument would have been futile or was not available as a matter of law. That argument, however, is foreclosed by the development of the law. In 2001, at the time of his trial, the Register in interpretation of depraved indifference was firmly ingrained in New York law, such that the failure to preserve the objection may have been futile or otherwise unavailable. See Gutierrez, 702 F.3d at 112 (finding cause to excuse a procedural default where, at the time of petitioner's 2001 trial, an objection by counsel would have been futile under the controlling law, i.e., Register, and that because Register still controlled, the legal basis for a sufficiency claim was not available to counsel); see also id. (the subsequent shift in New York state law was an "objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule" sufficient to establish cause for counsel's failure to raise it at trial) (citing Strickler, 527 U.S. at 283 n.24 (1999)).[4] But by the time Danielson's counsel filed his brief to the Court of

_____

[4] Because the Court concludes that Danielson cannot establish cause for his failure to raise his legal sufficiency argument to the New York Court of Appeals, the Court does not reconcile the apparent conflict between Gutierrez (finding cause for failure to raise a legal sufficiency challenge to a depraved indifference conviction during a 2001 trial), and DiSimone, 461 F.3d 181 (no cause for failure to raise legal sufficiency challenge to a depraved indifference conviction on appeal following a 2000 trial) and Brown v. Ercole, 353 F. App'x 518 (2d Cir. Nov. 16, 2009) (no cause for failure to raise legal sufficiency challenge to a depraved indifference conviction during a 2003 trial). But see Gutierrez, 702 F.3d at 113 n.5 (noting that "[a]lthough the panel has decided that the matter was preserved," two judges on the panel

Appeals, Feingold was the settled law and New York law required proof of *mens rea* for a depraved indifference conviction. Danielson's legal sufficiency argument would have been neither futile nor unavailable as a matter of law when he filed his briefs to the Court of Appeals. Thus, Danielson cannot avail himself of the conclusion reached by those cases that have found cause for default when, *at the time the default was committed*, such an argument had been consistently rejected by the courts. See Petronio v. Walsh, 736 F. Supp. 2d 640, 656-57 (E.D.N.Y. 2010) (finding cause for petitioner's procedural default of the contemporaneous objection rule in April 2002 based on a subsequent change in New York state law on deliberate indifference); Fernandez v. Smith, 558 F. Supp. 2d 480, 494 (S.D.N.Y. 2008) (same); Lawson v. McGinnis, 04 Civ. 2345 (RRM), 2013 WL 789173, at *16 (E.D.N.Y. Mar. 1, 2013) (same).

Danielson's second argument to establish cause is that his trial counsel was ineffective for failing to preserve his legal sufficiency argument. The New York Court of Appeals rejected Danielson's ineffective assistance of trial counsel argument because "under the law at the time of trial, circumstantial evidence of intent would still have supported a depraved indifference murder verdict." People v. Danielson, 9 N.Y.3d at 350. The Court need not, however, consider whether the Court of Appeals' decision "involved an unreasonable application of" Strickland v. Washington, 446 U.S. 668, 693 (1984), for purposes of establishing cause of the default. For even if *trial* counsel was constitutionally ineffective by failing to preserve a legal sufficiency objection – and the Court does not so find, see infra – Danielson's ground for *habeas* relief based on legal sufficiency is barred due to the failure to present that claim to the state's highest court,

---

believed that finding was not necessary because the court affirmed on the merits). In addition, the Court does not consider whether Danielson could establish cause to overcome the procedural default identified by the Appellate Division, when it declined to consider the merit of Danielson's legal sufficiency claim.

something for which his trial counsel is not responsible. Accordingly, Danielson has failed to establish cause to overcome his procedural default.

Finally, Danielson cannot demonstrate that this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of someone who is actually innocent . . . ." Murray v. Carrier, 477 U.S. 478, 496 (1986). To establish actual innocence, Danielson must show that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" based upon "*new reliable evidence* – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial . . . ." House v. Bell, 547 U.S. 518, 537 (2006) (citations omitted) (emphasis supplied); Schlup v. Delo, 513 U.S. 298 (1995). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. See Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) ("The district court's reference to the actual innocence exception is puzzling; Dunham presented no new evidence of his innocence . . . ."); see also Rozzelle v. Sec'y, Florida Dep't of Corr., 672 F.3d 1000, 1015 (11th Cir. 2012) ("[W]e decide only that the narrow and extraordinary nature of Schlup's actual innocence 'gateway' does not extend to petitioners, like Rozzelle, who did the killing and whose alleged 'actual innocence' of a non-capital homicide conviction is premised on being guilty of only a lesser degree of homicide."); Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) ("The exception is intended for those rare situations 'where the State has convicted the wrong person of the crime. . . . [Petitioner] does not claim that he is innocent of killing Raymond Matthews. Rather, he claims that he is not guilty of first degree murder because he was intoxicated and acted in self defense. However, these arguments go to legal innocence, as opposed to factual innocence." (citations omitted)).

Danielson does not argue that he is innocent of causing Kenneth Andrews's death; only that he is innocent of the legal crime of depraved indifference murder. Moreover, he has not presented the Court with new evidence to prove his innocence; he has advanced only legal arguments related to the elements of the crime. The Court of Appeals for the Second Circuit has previously rejected this argument, finding that "[t]here is nothing 'fundamentally unjust' about [a petitioner's] continued incarceration for killing [the victim] by shooting him . . . . Whether acting intentionally or with a depraved indifference, [the petitioner] committed second degree murder under New York criminal law." Lampon v. LaValley, 504 F. App'x 1, 2 (2d Cir. Nov. 28, 2012).[5] Under Supreme Court precedent, in light of Lampon, and because Danielson has not offered any new evidence in support of his actual innocence claim, I recommend that the Court find that the petitioner cannot establish his innocence for purposes of proceeding to a merits review of his legal sufficiency argument.

Two weeks after its decision in Lampon, however, the Court of Appeals recognized that there is some disagreement in this circuit as to whether a change in the law can provide the basis for an actual innocence claim. See Gutierrez, 702 F.3d at 111 n.4 (noting that there is a difference of opinion on this matter and citing cases). Several district courts have concluded that

---

[5] Lampon can be distinguished from the facts in Danielson's case in that, in Lampon, the jury first considered the depraved indifference murder and, having convicted on that count, did not consider the intentional murder charge. Lampon v. LaValley, 10 Civ. 2591 (BMC), 2011 WL 684623, at *3 (E.D.N.Y. Feb. 16, 2011). Thus, if Lampon's conviction had been vacated, he could still have been found guilty of intentional murder. By contrast, in Danielson's case, the jury first considered whether Danielson was guilty of intentional murder, and acquitted him of that crime, and then convicted him of depraved indifference murder. Accordingly, Danielson could be convicted only of manslaughter if his conviction for depraved indifference murder were to be vacated. While a conviction for manslaughter rather than depraved indifference murder constitutes "substantial disadvantage" of a "constitutional dimension," for purposes of finding prejudice, see Fernandez, 558 F. Supp. 2d at 494, and Petronio, 736 F. Supp. 2d at 657, it does not establish actual innocence of the depraved indifference conviction.

petitioners raising similar legal sufficiency arguments are actually innocent of depraved indifference murder. See Fernandez, 558 F. Supp. at 494 ("[Defendant's] actions . . . did not constitute depraved indifference murder as a matter of law, and it would be manifestly unjust for him to serve a sentence for a crime that he did not commit."); Petronio, 736 F. Supp. at 658 ("[N]o reasonable juror could have convicted [petitioner] of depraved indifference murder . . . . In this sense, Petronio is factually innocent of the charge for which he was convicted and it would therefore be a miscarriage of justice to sidestep the merits of this claim on habeas review.").

Accordingly, in light of the unsettled nature of this question, I recommend that the District Court issue a certificate of appealability to the Court of Appeals for the Second Circuit on the question of whether a *habeas* petitioner may avail himself of the actual innocence gateway under Schlup where he has been acquitted by a jury of intentional murder and where the evidence at trial is not legally sufficient to support a conviction for depraved indifference murder under People v. Feingold, 7 N.Y.3d 288 (2006). I find that the requirements for such certificate have been satisfied in that the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c).

## IV.   Merits Review

### A.  Legal Standard

After exhaustion, but before a federal court can issue a writ of *habeas corpus*, a petition must satisfy a "difficult to meet[] . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted). Under the AEDPA, *habeas* relief may be granted only when the state court's decision:

22

(1)     Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law "if the state court 'applied a rule that contradicts' that precedent, or reached a different result than the Supreme Court on facts that are 'materially indistinguishable.'" Mannix v. Phillips, 619 F.3d 187, 195 (2d Cir. 2010) (internal alterations omitted) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). As long as the state court decision applied the correct legal rule to the facts of a petitioner's case, it is not subject to *habeas* review, even if the federal court would have reached a different conclusion if it were to apply the rule itself. Williams, 529 U.S. at 406.

A state court decision involves an "unreasonable application" of clearly established federal law if the court identified the legal rule set forth in governing Supreme Court cases, but unreasonably applied the rule to the facts of the case. Id. at 407-08. A federal court may grant *habeas* relief only when the state court decision, as it pertains to any issue of federal law, was "objectively unreasonable" in light of relevant precedent; thus, in construing and applying federal law, even erroneous state court decisions, if deemed reasonable, will survive *habeas* review. Id. at 409-13; see also Besser v. Walsh, 601 F.3d 163, 178 (2d Cir. 2010) ("The proper inquiry is not whether a state court's application of, or refusal to extend, the governing law was erroneous, but whether it was 'objectively unreasonable.'" (quoting Williams, 529 U.S. at 409-10)). "[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review

23

on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2001).

### B.  Ineffective Assistance of Counsel

Defendants have a Sixth Amendment right to counsel. For the purposes of *habeas* review, Strickland v. Washington, 466 U.S. 668 (1984), is the relevant "clearly established Federal law" in an ineffective assistance of counsel claim. 28 U.S.C. § 2254(d)(1); Harrington v. Richter, __U.S. __, 131 S.Ct. 770, 785 (2011); Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006). A petitioner is not, however, required to show that the particular theory of ineffective assistance of counsel also is "clearly established." Aparicio, 269 F.3d at 95 n.8.

Evaluation of an ineffective assistance claim on *habeas* review is rooted in the two-pronged test articulated in Strickland. See Harrington, 131 S. Ct. at 785 (in a *habeas* petition based on ineffective assistance of counsel, the federal court reviews whether the state court decision "involved an unreasonable application of" Strickland). The first prong considers whether counsel's performance was objectively unreasonable, maintaining that any errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. Thus, "strategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengeable." Id. at 690; see Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (there is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect"); Michel v. Louisiana, 350 U.S. 91, 101 (1955) (when reviewing a *habeas* petitioner's claim of ineffective assistance, counsel's conduct is presumptively "sound trial strategy"); Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." (citations

24

and internal quotations marks omitted)). The petitioner has the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

Under the second prong, the petitioner must establish prejudice, which means showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding' . . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 131 S. Ct. at 787-88 (quoting Strickland, 446 U.S. at 693, 687). Both prongs are necessary to meeting the petitioner's burden. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

"Surmounting Strickland's high bar is never an easy task." Harrington, 131 S.Ct. at 778 (citation omitted). Rigorous and "highly deferential," Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001), the Strickland standard seeks to avoid the lessons of hindsight, Strickland, 466 U.S. at 689. Analysis of an ineffective assistance claim focuses on the fundamental fairness of the trial and asks whether a breakdown of the adversarial process occurred, rendering the result "unreliable." Strickland, 466 U.S. at 696.

A petitioner who brings a *habeas* claim based on ineffective assistance of counsel has a higher burden than a defendant on direct appeal raising those same claims. Harrington, 131 S.Ct. at 785. "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Id.; Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (an

25

objectively unreasonable application involves "[s]ome increment of incorrectness beyond error" (citation omitted)). Indeed, "[f]ederal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 131 S.Ct. at 788. See Burt v. Titlow, __ U.S. __, 134 S. Ct.10 (2013) (when reviewing a state prisoner's claim of ineffective assistance of counsel, Supreme Court cases require that the federal court use a "doubly deferential" standard); Knowles v. Mirzayance, 556 U.S. 111, 112, 124, (2009) (when the "highly deferential" standards created by Strickland and § 2254(d) are applied in tandem, the review is "doubly" deferential). Under this highly deferential standard, federal *habeas* relief is precluded if "fairminded jurists could disagree" on the correctness of the state court's decision. Harrington, 131 S.Ct. at 786.

Danielson cannot establish that his counsel's performance was constitutionally deficient because he failed to preserve his legal sufficiency argument to the depraved indifference murder charge at trial. In 2001, at the time of his trial, New York law was well-settled under the Register-regime: a depraved indifference murder conviction required only evidence showing circumstantial recklessness. Indeed, this formulation was reaffirmed by the New York Court of Appeals approximately one year *after* Danielson's conviction. People v. Sanchez, 98 N.Y.2d 373 (2002). Accordingly, Danielson's trial counsel cannot be faulted for having failed to raise an unavailable or futile legal sufficiency argument. See Maldonado v. Burge, 697 F. Supp. 2d 516, 541 (S.D.N.Y. 2010) ("The failure to make demonstrably futile arguments cannot constitute constitutionally ineffective assistance of counsel." (citation omitted)); Garcia-Leonardo v. United States, 10 Civ. 6653 (JSR)(DF), 2013 WL 6405176, at *13 (S.D.N.Y. Dec. 6, 2013) (finding petitioner could not prevail on ineffective assistance of counsel claim for failure to raise a futile argument). Because "under the law at the time of trial, circumstantial evidence of intent would

still have supported a depraved indifference murder verdict," People v. Danielson, 9 N.Y.3d at

350, Danielson cannot establish that his counsel's failure to raise a specific objection was

objectively unreasonable, and therefore, the New York Court of Appeals' application of

Strickland was not unreasonable.

Second, Danielson challenges his counsel's decision not to call two alibi witnesses at

trial. Both witnesses were to testify as to Danielson's whereabouts on the night of the shooting,

though one witness could only speak to his location until approximately 9:00 p.m. Trial counsel

had interviewed the two witnesses and provided timely notice of their existence. But he decided

at trial to pursue the strategy of attacking the credibility of the prosecution witnesses and not call

either witness at trial (a strategy that had proved successful when Danielson's co-defendant was

acquitted at an earlier trial).

Danielson filed a motion under C.P.L. § 440.10, arguing that his counsel was ineffective

as a result of this decision. Justice Moore held an evidentiary hearing on the question, at which

one alibi witness testified. Danielson's motion counsel at the hearing, over objection from

Danielson, refused to call as a witness Danielson's trial counsel or the second alibi witness. His

motion counsel explained that his decision not to call trial counsel as a witness was based on his

discussions with that attorney and were "for reasons that I believe are appropriately based." (See

440 Hr'g Tr., Feb. 22, 2012, at 64-65.)

In his decision denying Danielson's post-conviction motion, Justice Moore found that the

testimony of the alibi witness who did testify at the hearing "as a whole lacked clarity and

consistency" and was "not worthy of belief." (Ex. 7 at 3.) He outlined the various inconsistencies

in her hearing testimony and found that the trial counsel had "a valid tactical strategic reason for

not calling" the alibi witnesses given "the weakness in the credibility of the potential alibi witnesses." (Id. at 11.)

Significantly, Danielson does not argue that his counsel was ineffective for failing to interview these potential alibi witnesses or for failing to provide timely notice thus barring them from testifying at trial. Rather, he claims that counsel's strategic decision not to call them was of constitutional magnitude. Although trial counsel apparently never explained the basis for his decision to Danielson, it appears that Danielson's appointed counsel for his post-conviction motion investigated the issue and concurred with the strategic decision. Danielson's motion counsel spoke with Danielson's trial counsel, and so strong was his conviction in the correctness of trial counsel's decision not to call the alibi witnesses at trial, he refused to call one of the alibi witnesses to testify at the post-conviction hearing. Furthermore, Danielson's motion counsel refused to call trial counsel to testify at the hearing, contrary to the wishes of Danielson.

The state court's decision that this conduct constituted a tactical decision is not contrary to or an unreasonable application of Strickland, particularly in light of the deference given to attorneys' decisions on witness testimony. A decision not to call a particular witness is typically a question of trial strategy that is entitled to a presumption of reasonableness. See United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998). See also Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005) ("[C]ounsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation."). And the Court of Appeals has been particularly hesitant to disturb such "strategic" decisions. See Luciano, 158 F.3d at 660; Trapnell v. United States, 725 F.2d 149, 155 (2d Cir. 1983). See generally Strickland, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Accordingly, the

28

Court recommends that Danielson's petition for *habeas* relief based on the ineffective assistance of trial counsel be denied.

### C.  Claims Not Cognizable on *Habeas* Review

Finally, Danielson raises four additional arguments in his Original Petition and his Amended Petition: (1) the lower state court deprived him of due process by refusing to require alibi witness testimony at a post-conviction hearing; (2) the lower state court deprived him of due process by refusing to allow Danielson to represent himself at a post-conviction hearing; (3) the verdict was against the weight of the evidence; and (4) the pre-hearing court incorrectly concluded that a witness's identification of Danielson was "merely confirmatory." None of these claims is cognizable upon *habeas* review.

Danielson's due process claims for violations during his post-conviction hearing are not cognizable upon *habeas* review because there is no federal constitutional right to post-conviction collateral relief such as a C.P.L. § 440.10 hearing. *Habeas* review is limited to violations of the Constitution or federal law. Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). See Word v. Lord, 648 F.3d 129, 131-32 (2d Cir. 2011) ("[A]lleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief."); Jones v. Duncan, 162 F. Supp. 2d 204, 217 (S.D.N.Y. 2001) ("[F]ederal habeas relief is unavailable to redress alleged procedural errors in state post-conviction proceedings.") (quotation marks and citation omitted); Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) ("It is the original trial that is the 'main event' for habeas purposes."); Williams v. State of Missouri, 640 F.2d 140, 143-44 (8th Cir. 1981) ("Errors or defects in the state post-conviction

proceeding do not, ipso facto, render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings. . . . Even when there may be some error in state post-conviction proceedings, this would not entitle [petitioner] to federal habeas corpus relief since [petitioner's] claim here represents an attack on a proceeding collateral to [his] detention . . . ."). Therefore, the Court cannot review Danielson's two due process claims for alleged errors in his post-conviction proceeding.

Danielson correctly argues that once a state court chooses to grant post-conviction procedures, the chosen mechanisms "must comport with the demands of the Due Process Clause by providing litigants with a fair opportunity to assert their state-created rights." Dist. Att'y's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 89-90 (2009) (citation omitted). A federal court cannot, however, consider such a claim on a *habeas* petition; 42 U.S.C. § 1983 would be the appropriate statute for such a claim. See e.g., id. (considering the merits of a due process claim under 42 U.S.C. § 1983 for errors in a post-conviction proceeding); McKithen v. Brown, 626 F.3d 143, 152-53 (2d Cir. 2010) (same). Because Danielson's due process claim does not challenge the lawfulness of his conviction but the lawfulness of a post-conviction hearing and because there is no federal right to a C.P.L. § 440.10 hearing, Danielson presents no cognizable *habeas* claim for procedures in his C.P.L § 440.10.

In addition, claims regarding the weight of the evidence involve issues of state law only and are, therefore, unreviewable upon *habeas* review. See McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus . . . ."); Taylor v. Poole, 538 F. Supp. 2d 612, 618 (S.D.N.Y. 2008) ("It is well

established that 'weight of the evidence' claims are not cognizable on federal habeas review . . . .").

The same is true for Danielson's claim that the court erred in finding a photo identification by a witness to be "merely confirmatory," thereby rendering state notification statutes inapplicable. Wiggins v. Greiner, 132 F. App'x 861, 865 n.3 (2d Cir. 2005) ("Whether the challenged photo display in this case clearly qualifies as a confirmatory identification is an issue of state law not relevant to . . . *habeas* review."); Miles v. Ercole, 09 Civ. 1513 (KMK)(PED), 2011 WL 7975088, at *12 (S.D.N.Y. Oct. 18, 2011) ("Petitioner's argument concerning the 'confirmatory' nature of [petitioner]'s identification presented a question of state law only."). Accordingly, I find that Danielson's remaining claims are not reviewable by this Court on a *habeas* petition.

## CONCLUSION

For these reasons, I recommend that Danielson's petition for a writ of *habeas corpus* be DENIED. Because I find, however, that Danielson has made a substantial showing of a denial of a constitutional right, I recommend that the District Court issue a certificate of appealability to the Court of Appeals for the Second Circuit on the question of whether a *habeas* petitioner may avail himself of the miscarriage of justice gateway under Schlup where he has been acquitted by a jury of intentional murder and where the evidence at trial is not legally sufficient to support a conviction for depraved indifference murder under People v. Feingold, 7 N.Y.2d 288 (2006). See 28 U.S.C. § 2253(c).

*       *       *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS**
**TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Harold Baer, Jr. at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Baer. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**


DATED:       New York, New York
             April 4, 2014

                                    _____
                                    SARAH NETBURN
                                    United States Magistrate Judge



cc:          Khalil Danielson (*By Chambers*)
             02-A-0870
             Fishkill Correctional Facility
             P.O. Box 1245
             Beacon, NY 12508